ROCK STEEL BUILDING COMPANY, A CORPORATION
v. R. D. ELGIN AND COMPANY, INC., A CORPORATION

5-5667                                          473 S.W. 2d 871

Opinion delivered December 13, 1971

*Fulk, Lovett & Mayes* and *Paul W. Hoover, Jr.,* for appellant.

*Smith, Williams, Friday, Eldridge & Clark* and *Jerry T. Light* and *James C. Clark, Jr.,* for appellee.

CONLEY BYRD, Justice. Appellant Rock Steel Building Company commenced this action against appellee R. D. Elgin and Company Inc., to recover under a stockholder's contract certain "field costs" plus ten percent thereof. The trial court awarded judgment for $3,909.03. Appellant contends that the trial court erred in holding that it had failed to prove its claim for supervisory work in the amount of $6,266.12 plus ten percent and that it had failed to meet its burden of proving its claim for additional job costs in the amount of $5,886.00 plus ten percent.

The contract in so far as here applicable provides:

"On a project, each performing Stockholder sub-contractor will guarantee to the Company that it will perform its portion of the work on the project for a designated field cost, plus 10% thereof. In the event the field cost is overestimated, then the performing sub-contractor will be paid the actual field cost, plus 10% thereof. In the event the field cost is underestimated, then the performing sub-contractor will be paid only the amount of its guarantee of field cost, plus 10% thereof. On any project, the non-performing Stockholder sub-contractor of the same type will be paid 2% of actual field cost.

"At the end of the Company's annual accounting period, to the extent that funds are available, each performing Stockholder sub-contractor which shall have underestimated a project during said period will be paid the amount of the field cost in excess of the estimate, plus 10% thereof. This payment to performing Stockholder sub-contractors shall be made before any of the Company's funds can be distributed as bonuses, dividends or other extraordinary disbursements. If sufficient moneys are not available to satisfy all of the underestimates, plus 10% thereof, for the accounting period, then the performing Stockholder sub-contractors shall be paid a

portion of the amounts due them hereunder on a pro rata basis, and any deficiencies shall be carried forward for payment as soon as funds become available."

The controversy over the "field costs" for labor involves the labor of E. Miller. Appellant's president testified that Miller was a field superintendent who went from job to job to expedite the work. Miller's duties were in addition to those of a foreman and job superintendent kept on each job. On cross-examination the president stated that Miller performed the services which he and his son would have performed if they had not had so many jobs going at one time and that if he or his son had performed that labor, no "field cost" charge would have been made. Thus from appellant's own testimony a fact issue was made as to whether Miller's salary should have been included in the "field cost" contemplated in the contract. On this issue the trial court did not err in finding in favor of appellee.

Appellant's second contention involves job costs which appellant alleges were for materials delivered to and used in construction of various jobs appellant performed for appellee. The proof on this issue was made by appellant's president Leland B. Jones and Scott Lovett, a certified public accountant.

Jones testified that appellant's books and records were kept under his supervision. Appellant operated on a purchase order system of record keeping. Nothing could be purchased for a job without a written purchase order. When the invoices came in the bookkeeping department correlated the invoice to the purchase and indicated on both records the job to which the purchase was to be assigned.

Scott Lovett testified that the items making up the $5,886.00 claim turned up in reviewing the different files. These items were not turned up in appellee's original audit of the job costs. He did not know why they were not turned in, but some were on the wrong jobs on the books. His examination of the records and the tapes left

from appellee's audit showed that there were some fifty invoices not included in appellee's audit. With reference to the allocation of an invoice to a particular job, Mr. Lovett stated that the invoices had a supplier's indication and also a company notation that they were chargeable to a particular job. The company's notation was handwritten by its bookkeeper if the supplier had not put on the invoice where it was shipped. Mr. Lovett thus had no personal knowledge of where the items were shipped and his calculations were based only upon the notations on the invoices.

R. D. Elgin, appellee's president, testified that he had no way of knowing whether these particular payments by appellant were for materials used on appellee's jobs. He could have called the supplier but did not do so. At this late date it would be impossible to identify materials that might be in a roof some place. He would have no objections to admitting that the items were obligations of appellee if it could be determined that the materials were used on appellee's jobs.

Appellant had the burden of proving that its materials were used in appellee's jobs. The proof here only shows that materials were purchased for and allocated on appellant's books for use on appellee's jobs. To make a prima facie showing of use in a particular job, appellant also had the burden of proving that the materials were delivered to the particular jobs, *Stone Mill & Lbr. Co.* v. *Finsterwalder*, 249 Ark. 363, 459 S. W. 2d 117 (1970). This it failed to do.

Affirmed.